**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | | |
|---|---|---|
| JUAN LUIS ABREU, | : | |
| | : | Civ. Action No. 16-2932 (RMB) |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Respondent. | : | |

**BUMB**, United States District Judge

This matter comes before the Court on Petitioner Juan Luis Abreu's ("Abreu") Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. ("2255 Mot.," ECF No. 1; Mem. of Law in Supp. of Mot. to Vacate ("Petr's Mem.," ECF No. 7.) The Government filed an Answer in opposition to the motion. ("Answer," ECF No. 15.) For the reasons discussed below, it is not necessary to hold an evidentiary hearing and the § 2255 motion is denied.

I. BACKGROUND

Prior to his deportation in 2004, Abreu had a record of drug convictions. United States v. Abreu, 15cr54(RMB) (D.N.J.) (Presentence Investigation Report ("PSR"), ¶32.) On May 22, 2000,

he was sentenced to a prison term of ten-and-a-half years to life on two counts of criminal sale of a controlled substance (cocaine) in the second degree, in violation of New York P.L. 220.41. United States v. Abreu, 15cr54(RMB) (D.N.J.) (PSR, ¶31.) In November 2004, Abreu was paroled from prison in New York and deported to the Dominican Republic. (Id., ¶45.) He returned to the United States in 2005. (Id., ¶46.)

Abreu was arrested by the New Jersey State Police in Passaic County, New Jersey and charged with a drug trafficking offense on July 25, 2012. (Id., ¶32.) On January 17, 2014, he was convicted on a drug charge and sentenced to a three-year term of imprisonment. (Id.) On May 8, 2014, while serving his state sentence, Abreu was charged in this Court and then indicted on January 29, 2015, for illegal reentry in violation of 8 U.S.C. §§ 1326(a) and (b)(2). (Complaint; Indictment, United States v. Abreu, 15cr54(RMB) (D.N.J.), ECF Nos. 1, 15.) After he was released from New Jersey state prison, he came into federal custody. (Application and Order for Writ of Habeas Corpus (D.N.J. Feb. 2, 2015), ECF No. 16.)

Abreu was represented at his initial federal appearance by Assistant Federal Public Defender K. Anthony Thomas, Esq. (Declaration of K. Anthony Thomas, Esq. ("Thomas Decl.") ¶¶5-6, ECF No. 15-1.) Assistant Federal Public Defender Lori M. Koch, Esq. assumed Abreu's representation after the case was assigned to

the Camden, New Jersey Vicinage. (Declaration of Lori M. Koch, Esq. ("Koch Decl.")¶¶4-6, ECF No. 15-2.) Thomas and Koch declare that Abreu was adamant that he did not want to plead guilty and that he would not agree to stipulate to a particular U.S. Guidelines sentencing range or give up any rights to argue for a variance. (Thomas Decl.¶11, ECF No. 15-1; Koch Decl. ¶12, ECF No. 15-2.) Thomas and Koch both remember discussing Abreu's potential Guidelines exposure with him. (Id.)

The District of New Jersey has an Illegal Reentry Fast-Track Program Policy ("Fast-Track Program"),[1] pursuant to a U.S. Department of Justice Memorandum dated January 31, 2012,[2] under which illegal reentry defendants may be eligible for a two or four-level downward departure in their U.S. Sentencing Guidelines range, if they qualify and agree to certain terms. The Fast-Track Program requires the defendant to plead guilty quickly, agree to a stipulated Guidelines range, and waive his or her right to argue for additional variances or departures, or to appeal or collaterally attack the sentence. Fast-Track Program at 1-2, supra

---

[1] The text of the Fast-Track Program is available on pages 53-55 of the PDF at
https://www.fd.org/sites/default/files/criminal_defense.../fast-track-policies.pdf.

[2] See Memorandum from Deputy Attorney General James M. Cole, Department Policy on Early Disposition or "Fast-Track" Programs ("Cole Memo") (January 31, 2012), available at http://www.justice.gov/dag/fast-track-program.pdf.

3

n.1. In the sole discretion of the U.S. Attorney's Office, "[a]n individual defendant's participation in the fast-track program may be limited or denied based on . . . [t]he defendant's prior [history of] . . . drug trafficking." Fast-Track Program at 2, supra n. 1.

Thomas' practice is to ask the Government for a fast-track plea on behalf of a client charged with illegal reentry. (Thomas Decl. ¶¶17-18, ECF No. 15-1.) In his experience, however, a person who commits a new crime after the illegal reentry, will not qualify for the fast-track program. (Id. ¶18.) The only plea offer made by the Government to Abreu, through Thomas, was made on July 8, 2014. The offer contained factual stipulations, and Abreu rejected it. (Id.; see also Thomas Decl., Email chain, Ex. A, ECF No. 15-3; Plea Agreement, Ex. B, ECF No. 15-4.)

When Koch took over Abreu's representation, Abreu was clear that he would not agree to waive variance arguments and did not want to plead guilty unless he received a well below Guidelines sentence. (Koch Decl. ¶12, ECF No. 15-2.) By email, Koch nonetheless asked the Government to consider a fast-track plea. (Id. ¶¶7, 12-18; Ex. C, ECF No 15-5; Ex. D, ECF No. 15-6.) Koch explained to Abreu that she estimated his Guidelines range with a fast-track plea as 30-37 months, and a non-fast-track plea as 46-57 months, or after conviction at trial as 63-78 months. (Koch Decl. ¶17, ECF No. 15-2.)

Before the Government responded to Koch's request for a Fast-Track plea, Abreu told Koch he did not want it. (Koch Decl. ¶¶16-18.) Koch advised the Government by email:

> He does not want the fast track plea because he wants me to file for a downward variance, which he believes (against my advice), will get him even further below the 30-37 months he would be facing [with a fast-track plea]. He would want your agreement to recommend credit for the time served in state custody on the drug case.

(Koch Decl., Ex. D, ECF No. 15-6.)

At some point, Abreu signed the plea agreement the Government extended when he was represented by Thomas. (Koch Decl. ¶¶25, 28, ECF No. 15-2.) The plea agreement of July 8, 2014 contained only stipulations of fact, not Guidelines range stipulations. (Id.) Abreu quickly decided, however, that he did not want to go through with that plea agreement. (Id.) The Government extended a new, slightly different plea agreement on May 5, 2015, which Abreu did not sign. (Id. ¶28.)

On June 11, 2015, Koch sent an email again asking the Government to consider a fast-track plea after a relative of Abreu's contacted her and asked about the possibility of such a plea. (Id. ¶¶29, 30; Ex. L, ECF No. 15-14; Ex. G, ECF No. 15-9.) Koch advised Abreu's family that he was likely not eligible for a fast-track plea because of the time lapse since he was charged. (Koch Decl. ¶¶29, 31; Ex. L, ECF No. 15-14.) Nonetheless, Koch

5

wrote to the Government and asked for a fast-track plea. (Koch Decl. ¶30; Ex. G, ECF No. 15-9.) The Government responded that Abreu had not wanted a fast-track plea and no other plea offers would be forthcoming. (Id.)

Abreu wanted Koch to make several variance arguments, which a Fast-Track plea would have precluded. (Koch Decl. ¶¶19-22; Exs. E-J, ECF Nos. 15-7 to 15-12.) First, he wanted to challenge whether his prior deportation was pursuant to a valid deportation order; second, he wanted to challenge whether his prior New York conviction was an "aggravated felony;" and third, he wanted to argue for a variance based on the time he had already spent in New Jersey custody on the new drug charges. (Koch Decl. ¶¶19-21; Ex. D, ECF No. 15-6.)

On September 15, 2015, Abreu entered a guilty plea to the Indictment without having any plea agreement with the Government. (Id., ¶25); see also United States v. Abreu, 15cr54(RMB) (D.N.J.) (Plea Entered, ECF No. 24.) At his plea hearing, Abreu acknowledged that he was satisfied with his counsel, had reviewed and discussed the application for permission to plead guilty with his counsel, had consulted with his counsel regarding the immigration consequences of his plea and was satisfied with the explanation, and had reviewed the U.S. Sentencing Guidelines with counsel. (Koch Decl., Ex. N, ECF No. 15-16 at 7:11-13, 8:13-9:4, 13:12-17, 16:11-19:10.)

At sentencing, the defense made numerous arguments for a variance, including that Abreu may yet receive an additional sentence from New York for violating his parole (Koch Decl., Ex. M at 7:18-12:21, ECF No. 15-15); that the 16-point increase under the Guidelines for having been deported following conviction for an aggravated felony was unduly harsh, particularly for a non-violent status crime like illegal reentry (id. at 12:22-14:21); and that Abreu should receive credit for the time he spent in New Jersey custody. (Id. at 14:22-17:5.) The Government opposed Abreu's request for a variance and asked for a sentence at the lower end of the Guidelines range of 57-71 months. (Id. at 22:1-25.)

In imposing Abreu's sentence, the Court found that the Guidelines range was 57-71 months, and that a Guidelines sentence was supported by the § 3553(a) factors. (Id. at 37:9-39:11.) The Court rejected as too speculative Abreu's first variance argument, regarding a potential additional sentence from New York. (Id. at 39:12-22.) The Court also considered and rejected Abreu's argument that the Guidelines for illegal reentry were too harsh. (Id. at 39:23-40:10.) The Court addressed Abreu's third variance argument and found that the delay between July 2012, when immigration authorities first became aware of the defendant, and January 2014, was not an unreasonable delay. (Id. at 40:11-20.)

The Court found, however, that a 13-month variance was appropriate to give the defendant credit toward his federal sentence for the time he served in state prison from January 2014 through February 2015, until he was brought into federal custody. (Koch Decl., Ex. M at 40:21-41:23, ECF No. 15-15.) Thus, the Court varied three levels in order to impose a reasonable sentence. (Id. at 42:13-15.)

On December 30, 2015, Abreu filed a timely notice of appeal in United States v. Abreu, Crim. No. 15-54 (D.N.J.) (Notice of Appeal, ECF No. 29.) Counsel subsequently filed an Anders brief stating that counsel had not identified non-frivolous grounds for appeal. USA v. Abreu, 15cr4098 (3d Cir. Mar. 21, 2016).[3] Abreu declined to file a pro se appellate brief on his own behalf, and the Court of Appeals therefore dismissed his appeal. United States v. Abreu, Crim. No. 15-54 (D.N.J.) (Order of USCA, ECF No. 33.)

Abreu timely filed the present motion to vacate his sentence pursuant to 28 U.S.C. § 2255 on May 24, 2016 (2255 Mot., ECF No. 1), and timely filed his memorandum in support of the motion on August 2, 2016 (Petr's Mem., ECF No. 7.) Abreu alleges his trial counsel was ineffective for failing to argue for a non-guidelines sentence based on the potential disparities between districts that employed a Fast-Track Program and districts that did not. (Petr's

---

[3] Available at www.pacer.gov.

Mem. at 4, ECF No. 7.) Abreu further alleges ineffective assistance of counsel based on counsel's failure to pursue a Fast-Track sentence reduction at the time of sentencing. (Id. at 5.) Abreu asserts:

> Petitioner is eligible to ask the sentencing court for a fast-track sentence reduction or to compel the government to ask for the reduction. Before sentencing, the government may move for a downward departure from the adjusted base offense level pursuant to the fast-track program. The government did not make such a motion in this case. Additionally, to gain the benefits of the fast-track program, defendants are required to waive certain pretrial and posttrial rights. Petitioner has waived these rights.

(Petr's Mem., ECF No. 7 at 11-12.)

II. DISCUSSION

A. Legal Standard

A prisoner in federal custody may move to vacate, set aside, or correct his sentence on the ground that the sentence was imposed in violation of the Constitution. 28 U.S.C. § 2255(a). Courts should liberally construe a pro se § 2255 petition. U.S. v. Delgado, 363 F. App'x 853, 855 (3d Cir. 2010).

28 U.S.C. § 2255(b) provides, in relevant part, "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall … grant a prompt hearing thereon …;" see United States v. Tolliver, 800 F.3d 138, 141 (3d Cir. 2015) ("the district court abuses its

9

discretion if it fails to hold an evidentiary hearing when the files and records of the case are inconclusive as to whether the movant is entitled to relief") (quoting United States v. Booth, 432 F.3d 542, 546 (3d Cir. 2005)).

Here, Petitioner seeks relief on the basis that his trial counsel provided ineffective assistance with respect to a Fast-Track plea agreement and sentencing. The Sixth Amendment right to counsel is the right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The Sixth Amendment right to effective assistance of counsel includes assistance with plea-bargaining and sentencing. Lafler v. Cooper, 566 U.S. 156, 162 (2012).

A court must analyze an ineffective assistance of counsel claim in a § 2255 motion under the two-prong test established in Strickland v. Washington, 466 U.S. 668 (1984). Massaro v. U.S., 538 U.S. 500, 505 (2003). Under Strickland, a defendant must demonstrate that (1) counsel's performance was deficient; and (2) counsel's deficient performance prejudiced the defense. 466 U.S. at 687.

In order to establish deficient performance, a defendant must show that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. "Judicial scrutiny of counsel's performance must be highly deferential … a court must indulge a strong presumption

that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." 466 U.S. at 688-89 (internal quotations omitted). Accordingly, counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Id. at 690-691.

To establish prejudice, a defendant must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probably is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. In the context of plea offers, "a defendant must show the outcome of the plea process would have been different with competent advice." Lafler, 566 U.S. at 163.

B. Analysis

In his § 2255 motion, Abreu alleges, "[m]y defense counsel did not ask, neither to the Government nor to the Court, for the [application] of the Fast Track Program." (2255 Mot., ECF No. 1 at 4.) The facts that might[4] warrant relief on this claim are clearly

---

[4] The Third Circuit has not decided whether defense counsel might be ineffective for failing to engage in the plea negotiation process prior to receiving a formal offer from the Government. See Schnewer v. U.S., 703 F. App'x, 85, 88 n. 1 (3d Cir. 2017).

11

resolved in the record; Abreu's trial counsel did ask the Government for a plea agreement under the District of New Jersey's Fast-Track Program but Abreu told counsel he would not accept a Fast-Track plea agreement.

Thomas, who represented Abreu during his initial appearance, submitted a declaration under oath that it was his practice to seek a Fast-Track program plea from the Government in illegal reentry cases. (Thomas Decl. ¶17, ECF No. 15-1.) Koch, who represented Abreu after he was indicted, also declared under oath that she asked the Government to consider offering a plea agreement under the Fast-Track Program. (Koch Decl. ¶¶15-18, ECF No. 15-2.) E-mail correspondence between Koch and the Government corroborates Koch's statement and indicates that Abreu rejected a Fast-Track Program plea agreement before the Government responded whether such an agreement would be offered or not. Specifically, on February 18, 2015, Koch wrote to SAUSA Andrew Tyler: "I am also attaching a copy of the DNJ policy re fast track, please discuss with your supervisor whether you all would consider this for him." (Koch Decl., Ex. C, ECF No. 15-5.) On March 9, 2015, Koch wrote to SAUSA Tyler after having met with Abreu on March 3, 2015: "He does not want the fast track plea because he wants me to file for a downward variance . . . ." (Koch Decl. ¶¶17-18, ECF No. 15-1; Ex. D, ECF No. 15-6.) Therefore, the record conclusively shows that Abreu's trial counsel was not deficient for failing to request a

12

Fast-Track plea agreement from the Government. Moreover, Abreu cannot show prejudice because it was unlikely that he would qualify for a Fast-Track plea based on his conviction for drug trafficking after his illegal reentry. See Fast-Track Program at 1-2, supra n. 1.

Abreu also claims that counsel was deficient by failing to ask the Court at sentencing for a departure under the Fast-Track Program. As a matter of law, the Government has sole discretion in offering a plea agreement under the Fast-Track Program and seeking a Fast-Track departure at sentencing. See U.S.S.G. § 5K3.1; see Fast-Track Program at 3, supra n. 1. The Government did not make a Fast-Track motion in this matter. United States v. Abreu, 15cr54(RMB) (D.N.J. Dec. 16, 2015) (Sentencing Tr. ECF No. 32.) Therefore, defense counsel was not deficient by failing to raise the issue with the Court at sentencing.

Abreu's memorandum of law in support of his § 2255 motion focuses on his claim that his counsel was ineffective for failing to argue for a variance based on unfair sentencing disparities in districts that have a Fast-Track Program and those that do not. The factual premise for this claim is meritless. The District of New Jersey has a Fast-Track Program. As a result, any argument that this Court should have granted a variance based on a purported disparity between the District of New Jersey and other districts that have a Fast-Track Program fails on the merits. See e.g.,

United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999) ("There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument.")

III. Certificate of Appealability

The Court must assess whether a certificate of appealability should issue. A litigant may not appeal from a final order in a proceeding under 28 U.S.C. § 2255 without a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B). A certificate of appealability shall not issue unless there is a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000)).

Based on the discussion above, reasonable jurists would not find it debatable that Abreu received effective assistance of counsel because his counsel requested a Fast-Track Program plea agreement; and the District of New Jersey has a Fast-Track Program, rendering any claim for a sentence reduction based on disparity between districts who have such a program and those who do not is meritless.

IV. CONCLUSION

For the foregoing reasons, the motion to vacate, set aside, or correct the sentence (2255 Mot., ECF No. 1) is **DENIED**, and the Court SHALL NOT ISSUE a certificate of appealability.

An appropriate Order shall follow.

**Dated: September 28, 2018**

s/Renée Marie Bumb
**RENÉE MARIE BUMB**
**United States District Judge**